Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 547 | **DATE** | 8/10/2000 |
| **CASE TITLE** | Menchaca vs. American Medical Response | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, AMR and AMR-Illinois' motion for summary judgment (52-1) is denied in part and granted in part. The motion is denied as to Menchaca's Title VII sex discrimination claim and granted as to Menchaca's retaliatory discharge claim. Menchaca's motion to strike defendants' reply memorandum and for sanctions (75-1,2), is denied. The final pretrial order remains due on 9/30/00 and the case remains set for trial on 1/8/01. A final pretrial conference date will be set in due course.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | AUG 11 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 74 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 AUG 10 PM 5: 23 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA MENCHACA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 98 C 547 |
| | ) |
| AMERICAN MEDICAL RESPONSE OF | ) |
| ILLINOIS, INC. and AMERICAN MEDICAL | ) |
| RESPONSE, INC., | ) |
| | ) |
| Defendants. | ) |

DOCKETED
AUG 1 1 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Anna Menchaca was hired by a predecessor of American Medical Response of Illinois in 1988; she started as an emergency medical technician and worked her way up to become a paramedic. In 1995, she was promoted to become station manager of a garage in Elston, Illinois. In March of 1997, American Medical Response, which is AMR-Illinois' parent company, merged with MedTrans, a competitor in the emergency medical transportation field, and shortly after the merger, Menchaca was again promoted; in her new position she assumed station manager responsibilities for a second garage in Skokie, Illinois. In the newly-merged company, Menchaca reported to Joseph Lampinen, director of operations of AMR-Illinois; Lampinen in turn reported to Keith Rippy, AMR-Illinois' CEO.

In her capacity as station manager in the newly-merged company, Menchaca was asked to merge the Elston operations into the Skokie garage and to remodel the Skokie facility. In doing so, Menchaca discovered and corrected certain health and safety violations and other problems she perceived to exist at the Skokie garage: she pulled expired drugs and equipment from rigs and put in current fire extinguishers; she fixed the garage's leaky roof and unblocked an

emergency exit door; and she identified employees whose tuberculosis tests needed to be updated or documented.[1]

After getting the Skokie garage "in ship-shape," Menchaca took a vacation in late July and early August 1997. About a week after she returned from vacation, on August 12, 1997, Lampinen called Menchaca into the operations office and told her she was fired. John Campbell, AMR-Illinois' director of human resources, was also present. At that meeting, Lampinen told Menchaca that the company was firing her because she "didn't get along with other departments." Defendants' 12M, Ex. A, p. 304. After Menchaca asked for a written notice of termination, Lampinen memorialized the decision in a letter dated August 17, stating that Menchaca was fired because of "a profound and incompatible difference in management style and philosophy [which] resulted in the company losing confidence in your ability to effectively lead." Defendants' 12M Statement, Ex. D; Plaintiff's 12N Statement, Ex. 19. Although Lampinen wielded the axe, Rippy actually made the decision to fire Menchaca.

Menchaca filed a discrimination charge with the EEOC, which issued a right-to-sue letter on October 30, 1997. Menchaca then filed this lawsuit, initially charging AMR-Illinois with sex discrimination in violation of Title VII of the Civil Rights Act of 1991 and retaliatory discharge in violation of Illinois law. She later amended her complaint to add AMR, the sole shareholder of AMR-Illinois, as a defendant. AMR moved to dismiss the amended complaint, and the Court granted the motion with respect to the sex discrimination claim but denied the motion with respect to the retaliatory discharge claim. The case is now before the Court on AMR and AMR-

---

[1] Negative TB tests were required by OSHA and were necessary to obtain City of Chicago licenses known as "hard cards."

2

Illinois' motion for summary judgment.

AMR-Illinois argues that it is entitled to summary judgment on Menchaca's sex discrimination claim because it gave Menchaca, both verbally and in writing, a legitimate, nondiscriminatory reason for firing her, and she cannot show that this reason was pretextual. Additionally, AMR-Illinois and AMR argue that they are entitled to summary judgment on Menchaca's retaliatory discharge claim because Menchaca cannot show that her discharge was retaliatory or that it violated a clear mandate of public policy. AMR also argues that it is entitled to judgment on Menchaca's retaliatory discharge claim because there is no evidence that it in any way participated in or knew of Menchaca's discharge.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Id.* In considering whether there are genuine issues of material fact for trial, the Court is required to consider all evidence and draw all reasonable inferences in favor of Menchaca, the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. In employment discrimination cases like this one, the Court applies this standard with added rigor, as these cases often involve credibility disputes typically reserved for a jury. *See Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994). With this standard in mind, we turn first to Menchaca's claim that AMR-Illinois fired her because she is a woman.

Title VII of the Civil Rights Act of 1964, as amended, prohibits discrimination on the

3

basis of sex: "It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's ... sex." 42 U.S.C. §2000e-2(a)(1). To survive a summary judgment motion, a plaintiff alleging discrimination "need not 'produce the equivalent of an admission of guilt by the defendant.'" *Kariotis v. Navistar International Transportation Corp.*, 131 F.3d 672, 676 (7th Cir. 1997) (quoting *Troupe v. May Department Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). She need only raise "an inference of discrimination," *id.*, which can be done in two ways. The first way is to offer enough evidence--whether direct or circumstantial--to raise a genuine issue as to whether the employer fired the plaintiff because of her gender; the second is the now-familiar burden-shifting method first set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Menchaca has not specified which method she is attempting to use to prove her case, so the Court will analyze the evidence under each.

Using the direct method of proving intentional discrimination, a plaintiff may introduce direct evidence or circumstantial evidence. Direct evidence--evidence that can be interpreted as an acknowledgment of the defendant's discriminatory intent--is rarely found, *see Troupe*, 20 F.3d at 736; *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992), and indeed, the record contains no such evidence in this case. Circumstantial evidence--evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn"--may also be used to prove discrimination. *Troupe*, 20 F.3d at 736. The record in this case does contain such "bits and pieces."

First, there is some evidence that the company's stated reason for firing Menchaca was

contrived. Rippy, who testified that he made the decision to fire Menchaca and then directed Lampinen to do so, stated that he decided to fire Menchaca after discussing her performance problems at a chief stewards' meeting and after learning that she had failed to notify an ambulance team that they had potentially been exposed to a very contagious flesh-eating disease. *See* Plaintiff's 12N Statement, Ex. 16, p. 145. Yet performance problems and the flesh-eating disease incident were never mentioned at the August 12 meeting; nor were they included in the August 18 letter confirming the termination. Menchaca testified that at the August 12 meeting Lampinen said only that she was being fired because she "didn't get along with other departments." Defendants' 12M Statement, Ex. A, p. 304. Similarly, Lampinen's August 18 letter stated simply that Menchaca was "discharged due to a profound and incompatible difference of management style and philosophy. This resulted in the company losing confidence in your ability to effectively lead." Defendants' 12M Statement, Ex. D; Plaintiff's 12N Statement, Ex. 19.

Moreover, it does not appear that Menchaca was ever reprimanded for being difficult; nor does it appear that her job performance had ever been formally questioned prior to her firing-- which are both potentially significant in view of the fact that the company had a progressive discipline policy. *See* Plaintiff's 12N Statement, Ex. 25, p. 43. Menchaca testified that before the August 12 meeting, she had never heard anyone complain that she did not get along with people in other departments, though she knew some employees had called her a "bitch" and a "dyke." Defendants' 12M Statement, Ex. A, p. 315-16. Rippy testified that John Campbell, AMR-Illinois' director of human resources, had expressed concern that Menchaca's file lacked documentation to justify firing her, but that he (Rippy) fired her anyway. Plaintiff's 12N

5

Statement, Ex. 16, p 153.

Second, Menchaca introduced evidence that Rippy and Lampinen thought she failed to measure up to typical female stereotypes. *See Bellaver v. Quanex Corp.,* 200 F.3d 485, 492-93 (7th Cir. 2000) (discriminatory intent may be shown by evidence that employee was evaluated based on how her interpersonal skills matched stereotyped, unequal ideas of how men and women should act). John Startzel, who was a fleet mechanic with MedTrans and then AMR in the Skokie garage, testified that Lampinen told him Menchaca was a "pit bull dyke"; he also testified that David Riley, who ran the Skokie garage before Menchaca, told him Menchaca was a "bull dyke from hell." Plaintiff's 12N Statement, Ex. 22, ¶¶6-7.[2] Additionally, with respect to the August 18 termination later, John Campbell, who testified that he drafted the letter for Lampinen's signature, said that Menchaca was fired because "there was a difference of opinion as to the management style used by Anna Menchaca, which was not compatible with what was expected." Plaintiff's 12N Statement, Ex. 25, p. 111. When pressed, he explained that she was "aggressive" and "assertive," and that "being the type of manager she was, that there may have been some difficulties in getting her to manage in the style that was expected." *Id.,* p. 112. Finally, Myra Summers, another station manager for AMR-Illinois, stated that, from the way they acted, she believed Rippy and Lampinen did not like the idea of having women in management positions; she testified that Lampinen and Rippy were "standoffish" when they

---

[2] Menchaca testified that neither Rippy nor Lampinen had ever called her anything rude or unpleasant or ever said anything to her that was demeaning or sexist; she also testified that she never learned of Rippy or Lampinen saying anything about her that she considered to be sexist Defendants' 12M Statement, Ex. A, pp. 179-81. Though this may undercut somewhat the weight to be given to Startzer's testimony, it is not that unusual for a person who harbors prejudice to avoid communicating that fact to the object of his prejudice.

6

talked to Menchaca, but they were comfortable talking with the other men in the garage. Plaintiff's 12N Statement, Ex. 26, pp. 91-94.

The Court finds that this evidence could support a finding of intentional discrimination. The fact that Lampinen never mentioned the flesh-eating disease incident to Menchaca when he fired her or when he summarized his decision in writing is suspicious, as is the fact that the company arguably skirted its progressive discipline policy to fire Menchaca without first giving her warning or a chance to fix the alleged problems. Additionally, Menchaca's firing, when viewed in the context of testimony from other garage employees that Menchaca did an outstanding job whipping the Skokie garage into shape and that she was one of the best managers the company had, seems fishy, particularly when considered in conjunction with testimony that the company's higher-ups seemed not to like Menchaca as much as male managers because she was aggressive and assertive and did not fall in line. Whether Menchaca will ultimately be able to convince a jury that her termination was a result of intentional sex discrimination is certainly an open question, but the circumstantial evidence is sufficient to raise that inference.

Similarly, Menchaca would survive summary judgment under the burden-shifting framework, which requires the plaintiff initially to state a *prima facie* case of discrimination and then rebut any nondiscriminatory reason offered by the employer to justify the employment decision. *McDonnell-Douglas,* 411 U.S. at 802-03; *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1168-69 (7th Cir. 1998). The allegations in Menchaca's complaint would be sufficient to get her past the *prima facie* case step. *See Poole v. United States General Accounting Office,* No. 98 C 3977, 2000 WL 556569, at *3 (N.D. Ill. May 2, 2000) (a sex discrimination plaintiff can meet her burden of proving the prima facie case by merely alleging in her complaint that (1) she

7

belongs to a protected group; (2) she performed her job satisfactorily; (3) the defendant terminated her despite her qualifications; and (4) the defendant hired someone outside the protected group or treated similarly-situated men more favorably). And, the evidence set forth above would be enough to permit a jury to find that AMR-Illinois' stated reason for firing Menchaca may have been phony. *See O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997) (an employee may survive summary judgment by producing evidence from which a rational fact finder could infer that the company lied about its proffered reasons for firing her); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996) (pretext means a lie, specifically a phony reason for some action). As explained above, the evidence that Menchaca had never before been reprimanded for her alleged inability to get along with others; the evidence that the company bypassed its progressive discipline policy to fire her out of the blue; the evidence that Rippy's supposed reason for firing Menchaca was never mentioned either at the meeting at which Menchaca was fired or in the letter summarizing the reasons behind the firing decision; and the evidence that Rippy and Lampinen referred to Menchaca as a "dyke" and viewed her (negatively) as being aggressive and assertive, may be enough to convince a rational fact finder that AMR-Illinois did not, in fact, fire her because she had a different management style and philosophy, but because she is a woman. Accordingly, whether viewed under the direct method or under the *McDonnell-Douglas* method, Menchaca has offered enough evidence to raise an inference of discrimination based on sex, and AMR-Illinois' motion for summary judgment on Menchaca's Title VII claim is therefore denied.

The Court turns next to Menchaca's claim that she was fired in retaliation for having corrected public health violations. In Illinois, an at-will employee (which is what Menchaca

8

was) may be fired at any time for any reason or for no reason. *See Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128, 421 N.E.2d 876 (1981). But Illinois courts have recognized a limited and narrow exception to this rule in the form of the tort of retaliatory discharge: an employer may not fire even an at-will employee in retaliation for the employee's asserting a claim under the Workers' Compensation Act or in retaliation for certain activities which some cases and commentators refer to generally as "whistle-blowing." *See McGrath v. CCC Information Services, Inc.*, No. 1-99-0655, --- N.E. 2d ---, 2000 WL 726282, at *3-4 (Ill. App. June 6, 2000) (describing the exception and the limited situations in which it applies). Illinois courts have made clear that the exception is narrow and limited to these two types of cases; the tort should not be extended to apply in other situations. *See id.* at *5 (citing cases emphasizing goal of restricting the tort of retaliatory discharge to these circumstances). The first situation clearly does not apply here; Menchaca does not allege that she filed or was about to file a worker's compensation claim. Thus, the Court need only determine whether Menchaca has alleged that she was fired for activities that would fall under the general rubric of "whistle-blowing."

To win on her retaliatory discharge claim, Menchaca would have to prove: (1) that she has been discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy. *Howard v. Zack Co.*, 264 Ill. App. 3d 1012, 1021-22, 637 N.E. 2d 1183, 1190 (1994). She has obviously satisfied the first prong; there is no question that AMR-Illinois fired her. As to the second prong, Menchaca alleged in her complaint that when she took over the Skokie garage, she found numerous health and safety violations: she discovered that several employees did not have Chicago Board of Health Cards as required by law and that

9

several employees had not been tested for tuberculosis, a prerequisite to obtaining the cards; she found that the Skokie ambulance fleet was stocked with expired drugs, expired fire extinguishers and outdated intubation tubes; she discovered that some ambulance drivers were driving without licenses and that some emergency vehicles were operated with one paramedic and one emergency medical technician, instead of two paramedics as required by Chicago health regulations. *See* Complaint, ¶¶10-13. She alleged that she corrected all of these violations and that, as a result, she was fired. *Id.* ¶¶11-14. Although these allegations were enough to get Menchaca passed a motion to dismiss, they are not enough to defeat a summary judgment motion; at this stage of the litigation, Menchaca may not rest upon the allegations in her complaint, but must support her contentions with proper documentary evidence. *See Celotex Corp.*, 477 U.S. at 324.

Viewed in the light most favorable to Menchaca, the record shows that Menchaca cleaned up the Skokie garage (i.e., she corrected certain health and safety violations and started demanding that employees comply with the company's rules and with the union contract), and that, despite her performance, she was suddenly and (at least to some) inexplicably fired. But she offers absolutely nothing to link these two facts or to suggest that the firing was actually motivated by her clean-up work. In fact, she admitted at her deposition that neither Rippy nor Lampinen--who respectively made the decision to fire and fired Menchaca--were "displeased" or angry that she had corrected problems at the Skokie garage. Defendants' 12M Statement, Ex. A, p. 295. The only record evidence linking Menchaca's firing to her having cleaned up the Skokie garage is something Matthew Strazalka, an AMR-Illinois employee who worked under Menchaca, said at his deposition: when asked whether Menchaca "enforce[d] AMR's rules,"

Strazalka replied "yes," and when asked whether "the people who formerly worked for MedTrans [were] unhappy about her enforcing AMR's rules," he replied "yes, they were." Plaintiff's 12N Statement, Ex. 15, p. 38, line 24- p. 39, line 5. But enforcing AMR's rules is not the same as refusing to engage in or condone illegal conduct, which is the crux of Menchaca's retaliatory discharge claim. Moreover, this statement does nothing to implicate the person or people who made the decision to fire Menchaca; the "unhappiness" referenced in the question is as easily attributed to the employees who were now forced to follow the company's rules under Menchaca's supervision. From this statement alone, no jury could conclude that Menchaca was fired in retaliation for her activities. Accordingly, the Court finds that Menchaca cannot satisfy the second prong of her retaliatory discharge claim.[3]

Menchaca's retaliatory discharge claim fails to clear another hurdle. The cases discussing retaliatory discharge claims suggest that, to recover, an employee must have reported or complained about health and safety violations or other illegal activity--whether to an outside agency or to a supervisor within the company--and indeed reporting the violations would seem to be a necessary requirement for a "whistle-blower" retaliatory discharge claim. *See, e.g., Stebbings v. University of Chicago*, 312 Ill. App. 3d 360, 726 N.E.2d 1136 (2000); *Lanning v. Morris Mobile Meals, Inc.*, 308 Ill. App. 3d 490, 720 N.E.2d 1128 (1999). The Court could not find a single case in which a plaintiff successfully alleged retaliatory discharge in the whistle-blower context without having told someone about the violations. Nothing in the record suggests

---

[3] Having concluded that Menchaca cannot prove a prima case of retaliatory discharge, the Court need not consider AMR's argument about the lack of evidence that AMR participated in or knew of Menchaca's discharge.

11

that Menchaca ever reported any of the health and safety violations; she simply identified the problems and corrected them. And Menchaca has offered no justification for expanding the tort of retaliatory discharge to include "whistle-blowing" claims in which the whistle is never really blown. Nor has she offered any justification for expanding the tort beyond the two situations already recognized by the Illinois courts. Thus, in light of the Illinois courts' mandate that we not enlarge the scope of the retaliatory discharge exception to at-will employment, the Court would find that Menchaca's retaliatory discharge claim would fail even if she had been able to satisfy the second element of the prima facie case.

## CONCLUSION

For the reasons set forth above, AMR and AMR-Illinois' motion for summary judgment [52-1] is denied in part and granted in part. The motion is denied as to Menchaca's Title VII sex discrimination claim and granted as to Menchaca's retaliatory discharge claim. Menchaca's motion to strike defendants' reply memorandum and for sanctions [75-1, 75-2], a half-hearted motion filed seven months after Menchaca received the reply brief, is denied; indeed, the motion itself violates Rule 11 because Menchaca does not appear to have given defendants an opportunity to withdraw the reply brief before filing the motion for sanctions. The final pretrial order remains due on September 30, 2000, and the case remains set for trial on January 8, 2001. A final pretrial conference date will be set in due course.

Dated: August 10, 2000

MATTHEW F. KENNELLY
United States District Judge