IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JAN 1 4 2002

ANNA MENCHACA,

        Plaintiff,

    v.

AMERICAN MEDICAL RESPONSE
OF ILLINOIS, INC.

        Defendant.

Case No. 98 C 0547

Judge Matthew F. Kennelly

**FILED**

JAN 1 0 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:    David Cerda, Esq.
        333 South Wacker Drive
        Suite 510
        Chicago, Illinois 60606

    PLEASE TAKE NOTICE THAT on January 10, 2002, we caused to be filed with the
U.S. District Court, the attached **Defendant's Memorandum of Law in Support Of Its Objection
to Plaintiff's Petition for Attorneys' Fees and Costs**, a copy of which is herewith served upon you.

        By: _____
        One of the Attorneys for the Defendant American
        Medical Response of Illinois, Inc.

Thomas F. Ging
James C. Vlahakis
Hinshaw & Culbertson
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
(312) 704-3706

## Certificate of Service

    I, James C. Vlahakis, an attorney of record, state that I served the above and foregoing via
U.S. Mail to the above noted counsel of record on January 10, 2002, prior to 4:30 p.m.

        _____
        James C. Vlahakis

769320/1047287.1-HC01_DS1A

15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANNA MENCHACA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 0547 |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN MEDICAL RESPONSE | ) | Judge Matthew F. Kennelly |
| OF ILLINOIS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**
JAN 10 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JAN 1 4 2002

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTIONS TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

Defendant, AMERICAN MEDICAL RESPONSE OF ILLINOIS, INC. ("AMR"), by its undersigned counsel, hereby submits its Memorandum of Law in Support of Its Objections to Plaintiff's Application for Attorneys' Fees and Costs:

AMR respectfully submits that this Court should reduce plaintiff's claimed attorneys' fees in the amount of $405,510.01 because: (1) the hourly rates are unsupported; (2) the hours spent on certain tasks were excessive and not reasonable; (3) counsel billed at premium hourly rates for clerical, ministerial and paralegal work more appropriately delegated to non-professionals at lower hourly rates; and (4) fees for hours worked on wholly unsuccessful claims are not recoverable. The Court should also deny plaintiff the costs she seeks because she has provided the court with absolutely no evidence that such expenses were reasonable or necessary to this litigation.

357047

769320/3065255.1-HC01_DS2A

## I.   STANDARD FOR AWARDING ATTORNEYS' FEES

"[T]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' This product is commonly referred to as the 'lodestar.' The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." Spegon v. The Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999)(quoting Hensley v. Eckerhart, 461 U.S. 424 (1983))(other citations omitted).

The district court should exclude hours not reasonably expended: excess hours, redundant hours, or otherwise unnecessary hours. Hensley, 461 U.S. at 433. Moreover, fees for work on unsuccessful claims are not recoverable because "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved." Hensley, 461 U.S. at 434-35. See also Muscare v. Quinn, 614 F.2d 577, 579-581 (7th Cir. 1980). After determining the reasonable number of hours expended, the district court must determine whether the requested hourly rate is reasonable. Generally, the hourly rate should be calculated according to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). Put another way,

> The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate. If the district court is unable to determine the attorney's actual billing rate because, for example, the attorney has no fee-paying clients, then the district court should look to the next best evidence. The next best evidence of an attorney's market rate includes evidence of rates other attorneys in the area charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." Uphoff v. Elegant Bath, Inc., 176 F.3d 399, 407 (7th Cir. 1999)(citations omitted).

357047

2

769320/3065255.1-HC01_DS2A

While the main thrust of plaintiff's argument is that her counsel should be awarded the rates that they demand simply because they billed less hours on the prosecution of this case, the Seventh Circuit has held that "[a]n attorney's self-serving affidavit alone cannot satisfy a plaintiff's burden of establishing market value for that attorney's services." Id. at 408 (*citing* Blum, 465 U.S. at 895 n.11 (1984)(holding that a fee applicant must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation")). *See also* Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702, 707-08 (7th Cir. 2001).

As discussed below, plaintiff has not supported her request for attorneys' fees with any evidence to demonstrate the reasonableness of the rates requested or the hours claimed. Accordingly, plaintiff's requested fees should be substantially reduced.

## II.  ARGUMENT

### A.  Plaintiff Has Failed to Meet Her Burden Of Establishing the Reasonableness of the Hourly Rates Requested

This Court should sustain AMR's objections to plaintiff's petition for attorneys' fees because plaintiff has failed to meet her *prima facie* burden of proof to support the requested hourly rates.

357047

3

769320/3065255.1-HC01_DS2A

### 1.    Plaintiff Has Submitted No Competent Evidence to Support Her Attorneys' Requested Hourly Rates

Each of plaintiff's attorneys professes to work on a contingency fee basis[1] and submitted only self-serving, conclusory affidavits in support of the requested hourly rates. Plaintiff has submitted no affidavits from any other attorneys to support her contention that the hourly rates she seeks are, indeed, the prevailing market rates charged by attorneys of comparable skill, experience and reputation for handling similar matters as required. See Uphoff, supra. See also, Medina v. City of Chicago, 2001 WL 1104600, *3-*4 (N.D. Ill. Sept. 14, 2001) (holding that attorneys must offer more than conclusory or *ipse dixit* affidavit to support a fee petition).   Rather, Mr. Cerda has failed to point to a single fee paying civil litigation client. And as for his purported $325.00 rate as a one-time criminal defense attorney, Mr. Cerda has failed to identify the amount of hours he has worked. Absent is any evidence to support a finding that Mr. Cerda is justified to charge $325.00 an hour in what is apparently his first and only criminal matter. This rate is especially suspect considering the fact that it can be inferred that this rate has been employed in an effort to support his fee petition in a related § 1983 action.

Furthermore, the affidavits submitted by attorneys Santiago and Jauregui (admitted to practice in 1985 and 1986) fail to offer any competent evidence to support their claim that Mr.

---

[1]      Despite several verbal and written requests, Mr. Cerda has steadfastly refused to produce to defense counsel a copy of his contingency fee agreement in this case. Accordingly, AMR and the Court are without basis to determine the specific arrangement between plaintiff and Mr. Cerda and whether Mr. Cerda was, for example, paid any retainer. *See* Group Exhibit E.

357047                                              4

Cerda, an attorney with less experience, should be paid over $125 per hour more they have requested in this matter. Rather, attorney Santiago simply suggest that Mr. Cerda should be awarded his requested rate simply because "[Cerda] was able to prevail in this a [sic] case." *See* Santiago Aff., ¶ 9. In sum, these affidavits offer even less than the affidavit at issue in <u>Medina</u>.

Because plaintiff has failed to support the fees requested for any of her attorneys, this Court must look to the "next best evidence" of the market rates for plaintiff's attorneys (*i.e.*, rates previously awarded to the attorneys by the court and/or the rates awarded to attorneys of comparable skill, experience and reputation for handling similar matters). As discussed below, the prevailing market rate indicates that the requested fees are without merit.

### 2. Jon, Arthur and Danielle Loevy's Rates Have Been Judicially Determined

Incredibly, Plaintiff fails to mention in her fee petition that this Court determined the reasonable hourly rates of her attorneys Jon, Arthur and Danielle Loevy (collectively "Loevys") in the context of a civil rights case brought under 42 U.S.C. §1983 and state laws a mere six (6) months ago.[2] <u>Medina v. City of Chicago</u>, 2001 WL 1104600 (N.D. Ill. Sept. 14, 2001). In that case, Jon, Arthur and Danielle Loevy, respectively, requested fees at hourly rates of $265, $300 and $225. <u>Id</u>. at *4. However, after a review of a deficient affidavit submitted in support of their requested rates and the history of rates awarded the attorneys in other cases, this Court found the appropriate rates to be $210, $210 and $175, respectively. <u>Id</u>. at *4-5. In this case, the affidavits submitted in support

---

[2] Inexplicably, the petition to recover fees charged by the Loevy attorneys was filed prior to and separate from the petition to recover fees charged by Mr. Cerda and his associates.

of the Loevys requested rates are no more informative than those submitted in <u>Medina</u>. Without any further evidence of the reasonableness of the rates requested by the Loevys, it is appropriate for this Court to rely on its findings in <u>Medina</u>. Accordingly, the rates for Jon and Arthur Loevy should be reduced from the requested rates of $265 and $300 to $210, and the rate for Danielle Loevy should be reduced from the requested $225 to $175. Even assuming the propriety of the hours claimed by the Loevys, such a reduction in hourly rates would reduce plaintiff's overreaching request for fees by $3,415.25.

### 3.  David Cerda's Rates are Excessive in Light of Other Court Awards

David Cerda, plaintiff's primary billing attorney having been admitted to practice in 1990, requests compensation at hourly rates as high as $325. These rates are excessive and simply not commensurate with rates recently awarded in discrimination and civil rights cases in this circuit and district to attorneys with sometimes <u>vastly</u> more experience. *See* <u>Ingram v. Jones,</u> 46 F.Supp.2d 795 (1999)(awarding fees in §1983 case to attorney Frederick S. Rhine, admitted to practice in 1986, at rate of $205 and attorney Terrence J. Moran at a rate of $230); <u>Talbot v. Village of Sauk Village,</u> (1999 WL 1269193 (N.D. Ill. 1999)(awarding fees in Title VII case to attorneys Andrew Levenfeld and Steven Fritzshall, respectively admitted to practice in 1973 and 1981, at rate of $225); <u>Medina v. City of Chicago,</u> 2001 WL 1104600 (N.D. Ill. 2001)(awarding fees in §1983 case to attorney Arthur Loevy, admitted to practice in 1963, at rate of $210); <u>Garner v. Wade,</u> 1998 WL 474137

769320/3065255.1-HC01_DS2A

(N.D. Ill. 1998), aff'd. without op. 210 F.3d 374 (7th Cir. 2000)(awarding fees in §1983 case to attorney Gregory Kulis, admitted to practice in 1981, at a rate of $200).[3]

Accordingly, in conformance with the rates previously held reasonable by this and other courts in this circuit, AMR respectfully requests that this Court find that $200 is the reasonable and prevailing market rate for work performed by an attorney of Mr. Cerda's skill, experience and reputation to handle this type of case. See Uphoff, Blum and Small, supra.

## B. The Number of Hours Claimed is Unreasonable and Should be Reduced

In Hensley, *supra*, the Supreme Court directed the district courts to exercise their discretion to reduce excessive, redundant and unnecessary fees. In this case, plaintiff requests an excessive number of hours for several tasks performed.

For example, plaintiff seeks compensation for over 90 hours spent in September and October 2000 preparing a pretrial memo. The request is excessive. In Talbot, supra., this Court considered an applicant's request for compensation for 50 hours spent preparing a pretrial order in a Title VII case. The Court deemed the hours requested to be excessive reduced the applicant's compensable time to 35 hours. In this case, plaintiff has offered no justification for spending almost twice the time spent by the attorney in Talbot to prepare the pretrial memo. Clearly, no private paying client

---

[3]     In light of the difficulties in prevailing in most § 1983 claims brought on by the difficult evidentiary proofs (i.e., the Eighth Amendment's "deliberate indifference" standard and the Fourteenth Amendment's substantive due process "shocks the conscience" test), affirmative defenses (i.e., the *Heck v. Humphrey* doctrine, probable cause, qualified immunity, absolute immunity, quasi-judicial immunity)and the every shifting constitutional landscape (i.e., the existence of a federal malicious prosecution claim and when such a claim accrues?), Plaintiff's counsels' hourly rates in this relatively simple Title VII should be no higher than the rates indicated above.

357047                                    7

769320/3065255.1-HC01_DS2A

would pay a half a month's fees simply to prepare a pretrial order. In that absence of a compelling evidence to justify such an incredible investment of time, the time expended for work on the pretrial order must be reduced to 35 hours.

Likewise, plaintiff's counsel Mr. Cerda, spent over 115 hours preparing for trial in May and June 2001 when several hundred hours were previously billed for reviewing documents and deposition transcripts and responding to a motion for summary judgment in the preceding months. Given Mr. Cerda's expenditure of several hundred hours reviewing documents and becoming familiar with the facts and law of the case prior to and through the summary judgment phase, it was wholly unnecessary to spend another 115 hours preparing for trial. Accordingly, because the hours spent preparing trial were largely redundant of work previously completed, such hours should be reduced by 50%.

In addition, plaintiff has offered no justification for the dozens of hours logged by Jon and Arthur Loevy to attend trial. In fact, at trial, neither Jon or Arthur Loevy examined or cross-examined even a single witness or performed any other task so as to enable the court to determine whether the services they provided were reasonable, necessary and performed with skill or legal acumen sufficient to warrant compensation at their full hourly rates. During the trial, they were merely spectators, having only read a portion of a transcript into the record and conferenced with Mr. Cerda at side-bars. Because plaintiff has not sustained her burden to show justification for their appearance at trial, Jon Loevy's compensable time should be reduced by 43 hours of trial time and Arthur Loevy's time should be reduced by 21 hours.

**C.      Plaintiff Request Time for Work That Would Not Ordinarily Be**
         **Billed to a Client as an Attorney's Professional Services**

In this case, plaintiff's attorney David Cerda seeks compensation for numerous telephone

calls made and correspondence sent to court reporters, process servers and clerks and similar clerical

tasks more appropriately delegated to non-professional office staff.  These 48 time entries are

summarized in the chart attached hereto as Exhibit A.  Most of these time entries are block-billed

and commingled with descriptions of other tasks performed making it impossible to determine

exactly how much time was devoted to each clerical task.  These tasks are not properly billed at Mr.

Cerda's market rate and should be reduced to a rate of $10 per hour.  See Bull v. Coyner, 2001 U.S.

Dist. LEXIS 7463 (N.D. Ill. June 4, 2001)(reducing attorneys hourly rate for time spent on clerical

and administrative tasks to $10).  In addition, on 2/6/98, Mr. Cerda billed for .3 hours of "misc.".

Obviously, this vague entry must be eliminated from plaintiff's recoverable attorneys' fees.

**D.      The Court Must Reduce the Lodestar Calculation to Reflect Plaintiff's Lack**
         **of Success and Failure to Sufficiently Identify the Nature of Tasks Performed**

In this case, plaintiff seeks fees for his pursuit of a retaliatory discharge claim which this

Court summarily dismissed.  See Mr. Cerda's time entry for 8/14/00.  Likewise, plaintiff seeks fees

for preparing a motion to amend the complaint to add AMR, Inc. as a defendant; this Court denied

the motion.  See Mr. Cerda's time entry for 8/25/99.  Because these purported claims failed, plaintiff

should not be awarded those fees.  However the task of determining how many hours were devoted

to those tasks is impossible because those tasks are block-billed and commingled with time entries

for other tasks.

357047                                                    9

Indeed, this practice of block-billing and general lack of information concerning his time entries has made it virtually impossible to determine whether the time Mr. Cerda spent on many of his tasks was reasonable. Likewise, Mr. Cerda lists 122 time entries as telephone calls with or voicemail messages for his client without further description or elaboration making it impossible to determine the nature of the calls and whether they were reasonable or merely something of the nature that should be removed from the bills according to proper "billing judgment." *See* Spegon, 175 F.3d at 552 (emphasizing that "hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute"). These 122 entries exclude other time entries where the subject matter of the phone calls are identified or readily ascertained. See the chart attached hereto as Exhibit B. Plaintiff should be denied recovery for all of these entries for her failure to present evidence of their nature or reasonableness. Similarly, plaintiff seeks recovery for time spent by her attorneys conferencing with one another and with a paralegal, but those 32 time entries are devoid of any description regarding the nature or necessity of those conferences. See chart attached hereto as Exhibit C. Accordingly, those 32 time entries should be disallowed.

**E.    The Court Must Dismiss Plaintiff's Request for Costs Because Plaintiff
        Failed to Provide Any Substantiating Documentation of Costs**

Plaintiff requests reimbursement for thousands of dollars of "costs" which are expenses which are insufficiently described or documented or are otherwise normally subsumed within the attorney's billable rates and are not taxable costs. Phone calls, faxes and ordinary postage are overhead expenses of all attorneys and are not taxable as costs. NLFC, Inc. v. Devcom Mid-

357047                                      10

America, Inc., 916 F.Supp. 751, 765 (N.D. Ill. 1995). Plaintiff has requested reimbursement for all

of these things, but has not demonstrated that any of these expenses were beyond normal overhead.

Accordingly, plaintiff's request for reimbursement of such expenses should be denied.

Furthermore, the meager description provided by plaintiff with respect to numerous expenses

for which she seeks reimbursement are not adequate to permit AMR or the Court to determine

whether such expenditures were reasonable or necessary. Weinhaupt v. American Medical Assoc.,

874 F.2d 419, 430 (7th Cir. 1989) ("In order for the district court to award costs to the prevailing

party, the court must determine that the expenses are allowable cost items and that the costs are

reasonable, both in amount and necessity to the litigation"). For example, many expenses listed as

costs simply have a date and the word, "taxi," "legal tabs," "mileage," parking," or "federal express."

No further description is provided and no receipts are attached (except for 2 receipts attached to the

Loevys' fee petition).

However, most vague and troubling are the $19,000 in costs accrued for "scanning"

documents, graphics fees and computer presentation fees. See chart attached hereto as Exhibit D.

Again, there is no receipt, bill for service or any other evidence to demonstrate the nature of the

expense, how those expenses relate to the case or whether the cost was reasonable. See Id. at 763

("[g]enerally, . . . when the Court is unable to determine whether the [costs] were reasonably

necessary for use in the case, the claim for such costs should be denied"). More specifically, plaintiff

has offered no evidence to identify what documents were scanned, let alone identify that any of the

12,000 documents that were apparently scanned were essential to this litigation. Instead, it appears

357047

11

that plaintiff simply scanned every deposition and document produced in this case and then narrowed down the amount of documents to present at trial. While technology may be welcomed in the courtroom for complex matters and for organizational purposes, attorneys should not be provided with carte blanche to use technology at every chance they have. After all, the time honored art impeachment can be done with a transcript just as easily as it can be done with a computer. Similarly, the charges to not identify the costs that were involved. For instance, what was the scanning rate per page? Again, there is no evidence to suggest that these charges were reasonable.

Moreover, plaintiff requests reimbursement for dozens of deposition transcripts even though the identity of the deponents is often not disclosed, many deposition transcripts were never introduced at trial, and plaintiff has not otherwise demonstrated their necessity. Id. at 763-64 (declining to award costs associated with depositions and transcripts because fee applicant failed to show that the depositions were necessary for the case). For these reasons, AMR contends that the court should decline to award plaintiff any taxable costs for failure to prove their necessity or reasonableness.

## CONCLUSION

Although plaintiff's supporting memorandum does not offer any breakdown to the fees and costs requested (rather these amounts are submitted as exhibits), taking into account various rates David Cerda submitted ($200 to $325 per hour), his requested attorney's fees amount to $319,842.50. Notwithstanding the fact that hundreds of hours should be deducted as excessive or because the fees would not be paid by a fee paying client, applying the reasonable rate of $200.00 to this work, Mr.

357047

12

769320/3065255.1-HC01_DS2A

Cerda's fee award should be *no more than* $219,020.00. In reality, this figure should be greatly reduced by the unidentifiable amounts attributed to paralegal work or block-billing. This amount was calculated as follows. 1,207.6 hours - 55 hours (taken from reducing the 90 hours spend preparing the pre-trial memo. down to 35.) - 57.5 hours (taken from cutting Cerda's trial prep. time in half) = 1095.1 hours x $200.00 = $219,020.00.

As for the Loveys, as an initial matter, their fee request of $34,338.75 (again, unidentified in their fee petition) should be reduced by $3,415.25 due to a reduction of their rates, reducing their total request to $30,923.50. However, as noted above, Jon and Arthur Loveys' time should be reduced by 43 and 21 hours of trial time that was unnecessary and excessive. This will reduce their overall award as follows: Jon Lovey total hours of 106.75 - 43 hours x $210.00 per hour = $13,387.50 (rather than $24,018.75); and Arthur Lovey total hours 36.5 hours - 21 hours x $210.00 per hour = $3,255.00 (rather than $8,760.00).

Plaintiff's total recoverable costs should be reduced by $19,196.60 in unsupported costs related to "scanning."

357047

13

WHEREFORE, for all the foregoing reasons, AMERICAN MEDICAL RESPONSE OF

ILLINOIS, INC. respectfully requests that the Court substantially reduce the attorneys' fees

requested by plaintiff and deny plaintiff's request for costs.

Respectfully submitted,

One Attorneys for Defendant,
AMERICAN MEDICAL RESPONSE
OF ILLINOIS, INC.

Joseph J. Centeno
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895
(215) 665-3107

Thomas F. Ging
James C. Vlahakis
HINSHAW & CULBERTSON
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000

Dated: January 10, 2002

357047                                      14

769320/3065255.1-HC01_DS2A

Exhibit A

## EXHIBIT A

### Time Billed By Plaintiff's Attorneys for
### Completion of Administrative/Clerical Tasks

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 3/4/98 | Serve complaint and minute order | | X |
| 5/21/98 | Telephone call with court clerk | | X |
| 9/28/98 | Place call to court reporter | | X |
| 11/6/98 | Telephone call with special process server | | X |
| 11/9/98 | Telephone call with special process server | | X |
| 11/25/98 | Telephone call with court reporter for Judge Shadur | | X |
| 12/10/98 | Telephone call with Judge Shadur's court reporter | | X |
| 12/15/98 | Telephone call with court reporter | | X |
| 12/15/98 | Send fax to court reporter | | X |
| 7/6/99 | Telephone conference with court reporter's office | | X |
| 7/8/99 | Telephone calls with court reporters | | X |
| 7/28/99 | Make travel arrangements to Colorado for document inspection | | X |
| 8/4/99 | *Set up service through Myers [process server] | 2.0 | |
| 8/5/99 | *Travel fee calculations | .60 | |
| 8/5/99 | Review message from Myers Service [process server] | | X |
| 8/6/99 | Telephone call to Jensen Reporting Service – spoke | | X |
| 8/12/99 | Telephone call with special process server's office | | X |
| 8/13/99 | *Check on service of Negel, Randolph & Sonnefelt | .20 | |
| 8/13/99 | Telephone call to Jensen Reporting Service – spoke | | X |
| 8/13/99 | Telephone call to Jensen Reporting Service – spoke | | X |

1

| 8/13/99 | *Fax all proofs of service to Oliver and Ging | .20 | |
|---------|-----------------------------------------------|-----|--|

2

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 8/16/99 | Telephone call to Myers Service, Inc. – spoke [process server] | | X |
| 8/16/99 | Telephone call from Myers Service, Inc. [process server] | | X |
| 8/16/99 | Telephone call to Jensen Reporting Service – spoke | | X |
| 8/24/99 | Leave message for Ging via my receptionist | | X |
| 8/25/99 | Telephone call with Jensen Reporting Service | | X |
| 8/25/99 | Another telephone call with Jensen Reporting Service | | X |
| 8/30/99 | *Call Myers – Serve subpoenas [process server] | | X |
| 8/30/99 | Telephone call to Myers Service, Inc. – left message [process server] | | X |
| 8/30/99 | Telephone call to Myers Service, Inc. [process server] | | X |
| 8/31/99 | Send fax to special process server | | X |
| 8/31/99 | Telephone call with court reporter | | X |
| 8/31/99 | Input transcripts of Mackey; Sonnefeldt, and Bullard | | X |
| 9/1/99 | Telephone call to Myers Service, Inc. [process server] | | X |
| 9/6/99 | Telephone call to Jensen Reporting Service – no answer | | X |
| 9/21/99 | Telephone call to Jensen Reporting Service – spoke | | X |
| 9/27/99 | Telephone call with Jensen Reporting Service | | X |
| 9/30/99 | Telephone calls with Court Reporters in Chicago to set up deposition in Akron | | X |
| 9/30/99 | Telephone calls with Akron Court Reporters | | X |
| 9/30/99 | Telephone calls with Philadelphia Court Reporters | | X |

357600

| 10/13/99 | Telephone call with Agren Reporting | | X |
|---|---|---|---|

4

357600

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 10/27/99 | Telephone call to Jensen Reporting Service – spoke | | X |
| 11/12/99 | Review invoice from Myers Service | .10 | |
| 1/21/00 | Telephone call to Myers Service, Inc. – spoke | | X |
| 4/11/00 | Telephone conference with Philadelphia court reporter | .10 | |
| 6/2/00 | Telephone call with Esquire Deposition Services | | X |
| 7/11/00 | Telephone conference with Jensen Reporting re Feret depo | | X |
| 8/2/00 | Work on obtaining transcript of Rippy's deposition in the Balachek case | .40 | |

* Time billed at paralegal rates rather than attorney rates

357600

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 7/7/00 | Telephone call from Menchaca, Anna – spoke | | X |
| 7/25/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 7/26/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 7/28/00 | Telephone call to Menchaca, Anna – spoke | .10 | |
| 8/1/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 8/1/00 | Telephone call from Menchaca, Anna – spoke | | X |
| 8/14/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 8/29/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 8/29/00 | Telephone call to Menchaca, Anna – spoke | | X |
| 8/31/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 9/5/00 | Telephone call to Menchaca, Anna – no answer; telephone call from Menchaca, Anna – spoke | .10 | |
| 9/6/00 | Telephone call to Menchaca, Anna – spoke | .10 | |
| 9/15/00 | Telephone call to Menchaca, Anna – voice mail | .10 | |
| 9/18/00 | Telephone call from Menchaca, Anna – spoke | | X |
| 10/5/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 10/5/00 | Telephone call from Menchaca, Anna – spoke | | X |
| 10/16/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 10/19/00 | Telephone call to Menchaca, Anna – spoke | | X |
| 10/24/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 10/24/00 | Telephone call to Menchaca, Anna – voice mail | | X |

357543

| 12/18/00 | Telephone call to Menchaca, Anna – spoke | .10 | |
|----------|-------------------------------------------|-----|--|

357543

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 4/2/01 | Telephone call from Menchaca, Anna – voice mail | | X |
| 4/3/01 | Telephone call to Menchaca, Anna – voice mail | | X |
| 4/3/01 | Review voice mail from Menchaca | | X |
| 4/3/01 | Telephone call from Menchaca, Anna – spoke | | X |
| 4/10/01 | Telephone call to Menchaca, Anna – left message | | X |
| 4/11/01 | Telephone call to Menchaca, Anna – left message | | X |
| 4/17/01 | Telephone call to Menchaca, Anna – left message | | X |
| 4/17/01 | Telephone call from Menchaca, Anna – spoke | | X |
| 4/25/01 | Telephone call to Menchaca, Anna – voice mail; telephone conference with same | .20 | |
| 4/26/01 | Telephone call to Menchaca, Anna – voice mail | | X |
| 4/26/01 | Telephone call from Menchaca, Anna – voice mail | | X |
| 5/14/01 | Telephone call to Menchaca, Anna – left message | | X |
| 5/14/01 | Telephone call from Menchaca, Anna – spoke | | X |
| 5/23/01 | Telephone call to Menchaca, Anna – voice mail | | X |
| 5/23/01 | Telephone call from Menchaca, Anna – spoke | | X |
| 5/24/01 | Telephone call to Menchaca, Anna – voice mail | | X |
| 5/25/01 | Telephone conference with Menchaca | | X |
| 5/27/01 | Telephone call from Menchaca, Anna – spoke | | X |
| 5/29/01 | Telephone call to Menchaca, Anna – spoke | | X |
| 6/1/01 | Telephone call to Menchaca, Anna – spoke | | X |

357543

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 6/7/01 | Telephone call to Menchaca, Anna – spoke | | X |
| 6/10/01 | Telephone conference with Menchaca | | X |
| 6/25/01 | Telephone call with Menchaca – spoke | .20 | |
| 7/6/01 | Telephone call with Menchaca, Anna – spoke | .10 | |
| 7/19/0 | Telephone call from Menchaca, Anna – spoke | .10 | |
| 8/28/01 | Telephone call from Menchaca, Anna | .10 | |
| 10/9/01 | Telephone call from Menchaca, Anna | .10 | |

357543

# Exhibit B

## EXHIBIT B

### Telephone Calls With Client Without Any Description Of Subject Matter

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|------|-------------|-------------|----------------------------------------------------------|
| 9/22/97 | Telephone call with client | .20 | |
| 9/24/97 | Telephone call with client | | X |
| 9/25/97 | Telephone call with client | | X |
| 9/26/97 | Telephone call with client | | X |
| 10/14/97 | Telephone call with client | | X |
| 10/14/97 | Telephone call with client | | X |
| 10/14/97 | Telephone call with client | | X |
| 10/22/97 | Telephone call with client | .10 | |
| 10/22/97 | Telephone call with client | .20 | |
| 11/20/97 | Telephone call with client | .10 | |
| 1/26/98 | Telephone call with client | .10 | |
| 2/9/98 | Telephone call with client | .10 | |
| 3/4/98 | Telephone call with client | | X |
| 3/26/98 | Telephone call with client | .10 | |
| 4/3/98 | Review voice mail from client, return voice mail | .10 | |
| 4/20/98 | Telephone call with client | .20 | |
| 4/27/98 | Telephone call with client | .10 | |
| 5/15/98 | Place call to client | | X |
| 5/19/98 | Telephone call with client | | X |
| 7/8/98 | Telephone call with client | | X |
| 7/9/98 | Telephone call with client | | X |
| 7/10/98 | Telephone call with client | | X |
| 7/20/98 | Telephone call with client | | X |
| 7/30/98 | Telephone call with client | .10 | |
| 7/31/98 | Telephone call with client | .10 | |
| 9/10/98 | Telephone call with client; meet with client | .50 | |
| 11/6/98 | Telephone call with client | | X |
| 12/22/98 | Telephone call with client | .40 | |
| 1/14/99 | Telephone call with client | | X |
| 1/20/99 | Leave message for client; telephone call with client | | X |
| 5/5/99 | Telephone call with client | | X |
| 6/9/99 | Telephone call to Menchaca, Anna – spoke | | X |

357543

| 7/7/99 | Telephone call from Menchaca, Anna -- spoke | .30 | |
|--------|---------------------------------------------|-----|---|

357543

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 7/14/99 | Telephone call to Menchaca, Anna – left message | | X |
| 7/14/99 | Telephone call from Menchaca, Anna – spoke; meet with client. | | X |
| 7/26/99 | Telephone call to Menchaca, Anna – left message | | X |
| 7/27/99 | Telephone call to Menchaca, Anna – left message | | X |
| 7/27/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 8/2/99 | Telephone call to Menchaca, Anna – voice mail | | X |
| 8/2/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 8/11/99 | Telephone call to Menchaca, Anna – left message | | X |
| 8/11/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 8/13/99 | Telephone call to Menchaca, Anna – left message | | X |
| 9/15/99 | Telephone call to Menchaca, Anna – left message | | X |
| 9/16/99 | Contact Menchaca, Anna | | X |
| 10/4/99 | Telephone call to Menchaca, Anna – left message | | X |
| 10/4/99 | Telephone call to Menchaca, Anna – left message | | X |
| 10/4/99 | Telephone call with Menchaca | | X |
| 10/18/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 11/1/99 | Telephone call to Menchaca, Anna – left message. | | X |
| 11/1/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 11/18/99 | Telephone call to Menchaca, Anna – left message | | X |
| 11/18/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 11/18/99 | Telephone call from Menchaca, Anna – spoke | | X |

357543

| 11/24/99 | Meet with Anna | | X |

357543

| Date | Description | Time Billed | Impossible to Determine Time Billed Due to Block Billing |
|---|---|---|---|
| 11/30/99 | Telephone call to Menchaca, Anna – left message | | X |
| 11/30/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 12/17/99 | Telephone call to Menchaca, Anna – left message; telephone call from Menchaca, Anna – spoke | .10 | |
| 12/18/99 | Telephone call to Menchaca, Anna – no answer | | X |
| 12/18/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 12/19/99 | Telephone call from Menchaca, Anna – spoke | | X |
| 12/19/99 | Telephone call to Menchaca, Anna – left message | | X |
| 12/19/99 | Telephone call to Menchaca, Anna – no answer | | X |
| 12/20/99 | Telephone call to Menchaca, Anna – spoke | | X |
| 12/21/99 | Telephone call to Menchaca, Anna – spoke | | X |
| 12/22/99 | Telephone call to Menchaca, Anna – spoke | | X |
| 2/17/00 | Telephone call to Menchaca, Anna – spoke | .10 | |
| 3/28/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 3/28/00 | Telephone call to Menchaca, Anna – busy | | X |
| 3/29/00 | Telephone call from Menchaca, Anna – spoke | | X |
| 6/23/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 6/27/00 | Telephone call to Menchaca, Anna – no answer | | X |
| 6/27/00 | Telephone call to Menchaca, Anna – busy | | X |
| 7/7/00 | Telephone call to Menchaca, Anna – spoke | | X |

5

357543

Exhibit C

**EXHIBIT C**

## Conferences Between Plaintiff's Attorneys and Paralegal
## Without Any Description of Subject Matter

| Date | Description | Time Billed | Impossible to Determine Time Billed due to Block Billing |
|---|---|---|---|
| 10/14/97 | Confer with DAC | | X |
| 10/14/97 | Confer with DAC | | X |
| 10/15/97 | Confer with EJS | .10 | |
| 10/15/97 | Confer with DAC | .10 | |
| 12/16/97 | Confer with DAC | .60 | |
| 5/15/98 | Confer with DAC | .20 | |
| 5/18/98 | Confer with DAC | .20 | |
| 5/19/98 | Confer with DAC | .20 | |
| 5/19/98 | Telephone call with local counsel; confer with AJ | | X |
| 5/19/98 | Confer with DAC | .20 | |
| 7/10/98 | Confer with DAC | .20 | |
| 9/23/98 | Confer with DAC | .10 | |
| 9/23/98 | Exchange e-mail with Lopez | | X |
| 9/23/98 | Confer with DAC | .10 | |
| 1/14/99 | Confer with DAC | .50 | |
| 8/19 | Telephone call with Santiago | | X |
| 8/24/99 | Telephone call to Lopez, Alejandro – spoke | | X |
| 8/25/99 | Confer with DAC | .40 | |
| 8/26/99 | Telephone call from Lopez, Alejandro – spoke | | X |
| 9/27/99 | Send e-mail to Lopez; telephone call with Lopez | | X |
| 9/27/99 | Telephone call with A. Lopez | | X |
| 9/30/99 | Telephone call with Santiago | | X |
| 9/30/99 | Fax outline to Santiago | | X |
| 10/4/99 | Confer with DAC | .20 | |
| 10/5/99 | Confer with DAC | .50 | |
| 10/5/99 | Confer with Santiago | | X |
| 1/18/00 | Confer with DAC | .50 | |
| 6/2/00 | Confer with DAC | .30 | |
| 8/14/00 | Confer with DAC | .50 | |
| 5/22/01 | Telephone call to Lopez, Alejandro – spoke | | X |

357559

| Date | Description | Time Billed | Impossible to Determine Time Billed due to Block Billing |
|------|-------------|-------------|----------------------------------------------------------|
| 5/29/01 | Telephone call from Lopez, Alejandro – spoke | | X |
| 5/30/01 | Telephone call from Santiago, Eddie – spoke | | X |

2

357559

# Exhibit D

**EXHIBIT D**

## Unsubstantiated Expenses/Costs

| Date | Description | Amount |
|------|-------------|--------|
| 7/1/00 | Document imaging charge and database creation fee paid to Record Technologies | 1,000.00 |
| 8/1/00 | Document scanning and paralegal document review fee | 1,000.00 |
| 9/1/00 | Document review and scanning fee | 1,000.00 |
| 10/2/00 | Document review and scanning charge paid to Record Technologies, Inc. | 1,195.00 |
| 11/1/00 | Document review and scanning charge paid to Record Technologies, Inc. | 1,000.00 |
| 3/28/01 | Document review and scanning fee paid to Record Technologies | 2,978.67 |
| 5/22/01 | Trial subpoena fees and process server fees paid to MSI Detective Services, Inc. | 2,200.00 |
| 8/2/01 | Trial graphics fee paid to Trial Graphix | 1,557.33 |
| 8/2/01 | Trial consulting fee paid Zagnoli McEvoy Foley Ltd. | 1,566.00 |
| 8/2/01 | Trial graphics fee paid to Trial Graphix | 1,890.00 |
| 8/2/01 | Document preparation for trial computer presentations fee paid to PRISM Innovative Resources | 3,809.60 |

357838

# Exhibit E

01/10/02  THU 16:12 FAX 215 665 3121                                                    ☑01

LAW OFFICES

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000
FAX (215) 665-3165

**FILE COP**

*Joseph J. Centeno, Esquire*
*Direct Dial: (215) 665-3107*
*E-Mail: joseph.centeno@obermayer.com*

November 21, 2001

**VIA FACSIMILE AND REGULAR MAIL**
David A. Cerda, Esquire
Cerda & Associates
333 West Wacker Drive
Suite 510
Chicago, IL  60606
Fax No. (312) 223-9892

Re:    Menchaca v. American Medical Response
       Civil Action No. 98 C 0547

Dear Mr. Cerda:

This letter is in reply to your two (2) letters dated today.

Our range of rates in the Labor and Employment Department are as follows:

|            | 9/97-8/98 | 9/98-8/99 | 9/99-8/00 | 9/00-8/01 | 9/01-8/02 |
|------------|-----------|-----------|-----------|-----------|-----------|
| Partners   | $170-180  | $170-180  | $170-180  | $170-210  | $170-210  |
| Associates | $145-155  | $145-155  | $145-155  | $145-175  | $145-175  |

We are, again, requesting that you provide us with a copy of your fee agreement in this case. Also, provide us information concerning the fees you charged in employment cases since 1997 in which you performed services like those provided by you in this case.

Very truly yours,

JOSEPH J. CENTENO
For: OBERMAYER REBMANN MAXWELL & HIPPEL LLP

JJC/ldb

01/10/02  THU 16:09 FAX 215 665 3121                                        ☒008

LAW OFFICES

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER·19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000

FAX (215) 665-3165

**FILE COPY**

Joseph J. Centeno, Esquire
Direct Dial: (215) 665-3107
E-Mail: joseph.centeno@obermayer.com

November 2, 2001

**VIA FACSIMILE AND REGULAR MAIL**
David A. Cerda, Esquire
Cerda & Associates
333 West Wacker Drive
Suite 510
Chicago, IL 60606
Fax No. (312) 223-9892

    Re:    Menchaca v. American Medical Response
            Civil Action No. 98 C 0547

Dear Mr. Cerda:

    This letter is in reply to your letter dated October 29, 2001, your LR 54.3 motion for information and the Court's instruction to produce information.

    There is no separate fee agreement specifically for the Menchaca litigation. However, we will make available to you today at Mr. Ging's office, copies of AMR's fee agreements with defense counsel for the year's 1997, 1998, 1999, 2000 and 2001. We will also make available to you information concerning the rates billed by the Obermayer firm to other significant clients for handling similar matters. However, consistent with the voicemail left for you today by Joseph Centeno, Esq., we will provide these records for your review and copying, subject to your agreement to keep these records confidential and not to disclose these records except for purposes of this litigation. Enclosed is a proposed Agreed Protective Order for your review and signature.

    Also, we will make available today at Mr. Ging's office, Defendant's most recent billing records, from August through September. Billing records from the Rokacz firm which were inadvertently omitted from our earlier production will also be available at Mr. Ging's office today.

    In sum, Defendant has produced all documents in its possession that memorialize its billed attorneys' fees and rates in this matter.

    As above-referenced documents clearly demonstrate, Defendant's counsel has not agreed to a certain set of rates if Defendant prevailed, and to cut those rates if Defendant

344998

01/10/02  THU 16:10 FAX 215 665 3121                                    ☒00

OBERMAYER REBMANN MAXWELL & HIPPEL LLP
David A. Cerda, Esquire
November 2, 2001
Page 2

lost. Defendant's counsel also has not agreed to charge a lower rate for the Menchaca
case in return for a higher rate in any other cases. To the contrary, the rates billed on the
Menchaca case have been the same rates billed on any other litigation handled at the
Obermayer firm for AMR and are the same or lower than the rates charged other
significant Obermayer clients for handling similar matters.

Finally, please provide us with billing records and fee agreements demonstrating
the rates you have charged your clients with respect to other employment litigation in the
last several years. Please provide this information by next week.

Very truly yours,

JOSEPH J. CENTENO
For: OBERMAYER REBMANN MAXWELL & HIPPEL LLP

JJC/ldb
Enclosure
cc:    Thomas Ging, Esquire (w/enclosure)

344998

01/10/02 THU 16:10 FAX 215 665 3121             Ø007

# HINSHAW & CULBERTSON

| | | |
|---|---|---|
| BELLEVILLE, ILLINOIS | SUITE 300 | SAN FRANCISCO, CALIFORNIA |
| BLOOMINGTON, ILLINOIS | 222 NORTH LA SALLE STREET | FT. LAUDERDALE, FLORIDA |
| CHAMPAIGN, ILLINOIS | CHICAGO, ILLINOIS 60601-1081 | JACKSONVILLE, FLORIDA |
| CRYSTAL LAKE, ILLINOIS | 312.704.3000 | MIAMI, FLORIDA |
| JOLIET, ILLINOIS | | TAMPA, FLORIDA |
| LISLE, ILLINOIS | | MUNSTER, INDIANA |
| PEORIA, ILLINOIS | TELEFAX 312.704.3001 | MINNEAPOLIS, MINNESOTA |
| ROCKFORD, ILLINOIS | | ST. LOUIS, MISSOURI |
| SPRINGFIELD, ILLINOIS | | APPLETON, WISCONSIN |
| WAUKEGAN, ILLINOIS | November 2, 2001 | BROOKFIELD, WISCONSIN |
| | | LAKE GENEVA, WISCONSIN |
| | | MILWAUKEE, WISCONSIN |

WRITER'S DIRECT DIAL NO.

(312) 704-3715

FILE NO.

769320

*VIA FACSIMILE AND MESSENGER*

Mr. David Cerda
Cerda & Associates
333 West Wacker Drive
Suite 510
Chicago, IL 60606

    RE:   *Menchaca v. American Medical Response, Case No. 98 C0547*

Dear David:

    I have reviewed your letter from earlier today which was sent in response to Mr. Centeno's letter from early this afternoon which informed you that the documents you requested were available for your inspection at our office. While you claim you are too busy to walk to our office to review these documents, out of professional courtesy to you, I have taken time out of my equally busy schedule to write you this letter in an effort to avoid another trip to court to resolve this ongoing fee petition issue.

    While your letter makes clear that you have refused to agree to the proposed protective order tendered by Mr. Centeno (without identifying any specific part of the order which "is too restrictive"), please understand that the Obermayer firm and its clients take rather seriously the confidential of the enclosed documents as does Hinshaw. As you know, Local Rule 54.3(d) obligates you to provide us "with prior written notice and a reasonable opportunity to request an appropriate protective order." While you have rejected our protective order, you are still under an obligation to provide us with notice of whether you intend to submit any of these documents to the Court to support your fee petition. We deem five business days from the receipt of a letter to be "reasonable" notice.

    Bearing this point in mind, we want our position to be very clear to you. As Mr. Centeno's letter discusses, Obermayer's listing of its rates to similar entities and the "Legal Services Agreement" between the Obermayer firm and AMR establish that the Obermayer has *not* provided "a discount or lower rate" to AMR as you suggest. Accordingly, for this reason, we believe that the

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS       769320/3055031.1-HC01_DS2A

Mr. David Cerda
November 2, 2001
Page 2

details of "Legal Services Agreement" and the names of its similar clients are irrelevant to the issue of whether you should be paid up to $300 per hour. Rather than offering billing information to support your own petition, you have tried to turn-the-tables on defense counsel by pointing to us to support your fee request. In light of this fact, there is absolutely no need for you to file the "Legal Services Agreement" or disclose the names of Obermayer's clients in support of your position. Again, if you wish to file this document to the Court, please provide us with five business days notice to allow us to prepare an appropriate protective order.

As for Hinshaw, in light of your failure to identify any particular year in your demand for relief in your most recent motion, we have enclosed our rates for 2001 to our various clients and Mr. Smeltzler's for 1999 (his last full year at Hinshaw). We have redacted the names of our clients for purposes of confidentiality. For your information, the only Title VII case I have worked on is this case. However, at your request, I can specifically identify the rates to my § 1983 clients. As for Mr. Ging and Mr. Smeltzer, should your request me to do so, I will identify any other Title VII litigation, they have done (neither of them have done any § 1983 work). And, if you still persist in arguing that Hinshaw has discounted our fees to Obermayer (which is not the case as our rates reflect), I will produce our fee agreement to you ASAP. We trust that you will provide us with five days notice before you include this document in any court filing.

On a final note, in light of the fact that you appear to work on a contingency basis on most of your cases, please provide us with records related to your billing rates on *all matters you have worked on.* For example, please provide us with billing information and retainer agreements for all employment discrimination § 1983 and all other legal matters you have worked on for an hourly rate (i.e., any commercial litigation or real estate matters). This information will allow us to respond to your fee petition. **In the meantime, please be advised that we are reserving our rights to object to Mr. Loevy's petition in the form of a combined response to your petition.**

Thank you very much for your cooperation. If you have any questions or concerns, feel free to give me a call.

Very truly yours,

HINSHAW & CULBERTSON

James C. Vlahakis

JCV/

cc:  counsel of record

enclosures

769320/3055031.1-HC01_DS2A

LAW OFFICES

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

Jacob M.Sitman
Direct Dial (215) 665 - 3092          (215) 665-3000
Email jacob.sitman@obermayer.com      FAX (215) 665-3165

November 20, 2001

**FILE COPY**

<u>VIA FACSIMILE AND FIRST-CLASS MAIL</u>
David A. Cerda, Esquire
Cerda & Associates
333 West Wacker Drive
Suite 510
Chicago, IL  60606
Fax No. (312) 223-9892

      Re:    Menchaca v. American Medical Response
           Civil Action No. 98 C 0547

Dear Mr. Cerda:

      This is in response to your letter of November 19, 2001 requesting that this firm
produce "information concerning the range of rates charged on all files by the attorneys
who worked on this case from 1997 to date."

      We have already provided you information concerning the rates charged by this
firm's attorneys and paralegals for performing services akin to those provided in this case
to clients of the firm that are most like AMR.  The rates we have provided to you are
substantially similar to the rates charged to all our clients.

      More to the point, despite our repeated verbal and written requests that you
provide us with the undoubtedly more relevant information concerning your fee
agreement in this case, your fee agreements in other cases over the past four years and
other information demonstrating the rates that you have charged your clients, you have
not provided any such information.  Please do so by Friday, November 23, 2001.

      Very truly yours,

      JACOB M. SITMAN
For: OBERMAYER REBMANN MAXWELL & HIPPEL LLP

JMS/bd
Enclosure

349240

OBERMAYER REBMANN MAXWELL &    PEL LLP

David A. Cerda
Page 2
September 26, 2001

Furthermore, even assuming the timeliness of plaintiff's submission of information to defense counsel and the filing of the fee petition, plaintiff has failed to comply with other pre-filing requirements of Local Rule 54.3. For instance, although plaintiff requests reimbursement for over $41,000 in expenses, the limited description of such expenses, without supporting documentation, is not sufficient to permit a reviewing court to determine the nature of the expense or whether such expenses are "reasonable" and "necessary." Accordingly, plaintiff has failed to comply with her obligation to provide defendant with "the evidence that will be used to support the related nontaxable expenses to be sought by the motion [for attorneys' fees]." LR 54.3(d)(4).

Likewise, plaintiff has failed to provide defendant with an affidavit or other evidence sufficient to demonstrate that your hourly rates are appropriate and reasonable in light of your experience in similar cases. Indeed, plaintiff has provided no information concerning the legal practice, experience or billing practices of her primary counsel in violation of LR 54.3(d)(2).

Finally, even assuming plaintiff's compliance with Local Rule 54.3, the proposed fee request is excessive. For example, it is incredible to suggest that it was reasonable for plaintiff's counsel to spend in excess of 90 hours drafting the pre-trial order in this case and an additional 115 hours preparing for trial where several hundred hours were previously billed for reviewing documents and deposition transcripts and responding to a summary judgment motion. Defendant also objects to (1) plaintiff's counsel's method of block-billing, (2) billing for phone calls and meetings without description of the subject matter, and (3) counsel's billing at premium rates for counsel to appear at trial merely as a spectator. Defendant further objects to plaintiff's request for attorney's fees at a premium hourly rate for travel time and clerical, ministerial and paralegal work more appropriately delegated to persons with significantly lower hourly rates -- a private client would not pay premium rates of an experienced attorney for these tasks, neither will Defendant. Furthermore, Defendant objects to hours that were billed in pursuing unsuccessful claims (e.g., the retaliation claim that was dismissed on summary judgment and the pursuit of an amended pleading against AMR, Inc.).

Accordingly, your "preliminary draft of fees and costs" and plaintiff's fee petition are both untimely and noncompliant with court rules; thus, the fee petition is barred. Nevertheless, we enclose for your review (by overnight mail only), an accounting of Defendant's attorneys' fees and costs in this matter in accordance with LR 54.3(d)(5).[1] We submit these records in good faith and without waiver of our rights to contest the

---

[1] The attorneys' fees and cost records enclosed are exclusive of certain additional services rendered by Defendant's counsel in this matter pursuant to a retainer agreement covering this and various other matters.

338521

01/10/02   THU 16:09 FAX 215 665 3121

OBERMAYER REBMANN MAXWELL    PPEL LLP

David A. Cerda
Page 3
September 26, 2001

timeliness or sufficiency of your fee petition or compliance under applicable rules of
court.

Very truly yours,

JACOB M. SITMAN
For: OBERMAYER REBMANN MAXWELL & HIPPEL LLP

JMS/bd
cc:   Thomas F. Ging, Esq.

338521

01/10/02   THU 16:12 FAX 215 665 3121

# HINSHAW & CULBERTSON

BELLEVILLE, ILLINOIS
CHAMPAIGN, ILLINOIS
CHICAGO, ILLINOIS
CRYSTAL LAKE, ILLINOIS
JOLIET, ILLINOIS
LISLE, ILLINOIS
PEORIA, ILLINOIS
ROCKFORD, ILLINOIS
SPRINGFIELD, ILLINOIS
WAUKEGAN, ILLINOIS

SUITE 300
222 NORTH LASALLE STREET
CHICAGO, IL 60601-1091

312-704-3000

TELEFAX 312-704-3001

SAN FRANCISCO, CALIFORNIA
FT. LAUDERDALE, FLORIDA
JACKSONVILLE, FLORIDA
MIAMI, FLORIDA
TAMPA, FLORIDA
MUNSTER, INDIANA
MINNEAPOLIS, MINNESOTA
ST. LOUIS MISSOURI
APPLETON, WISCONSIN
MILWAUKEE, WISCONSIN

July 3, 2001

FILE NO.
769320

WRITER'S DIRECT DIAL
(312) 704-3706

VIA FACSIMILE (312) 223 9892

Mr. David A. Cerda
333 West Wacker Drive
Suite 510
Chicago, Illinois 60606

RE:   Anna Menchaca v. American Medical Response, Inc.
      No. 98 C 0547

Dear Mr. Cerda:

I am responding to one of your facsimile letters of July 3, 2001 addressed to Mr. Centeno and/or the undersigned. I am referring specifically to your letter addressing Local Rule 54.3 and making demand upon defense counsel to disclose all billing rates, itemized time sheets, etc.

Mr. Centeno is on vacation this week. Therefore in his absence, I wanted to write you immediately regarding the contents of your letter because I believe you have not followed the procedures outlined in that rule.

I take it from your letter that you intend to file a motion for fees and costs.   In that case, it is incumbent upon you to provide us first with the information outlined in Local Rule 54.3 (d): specifically items (1) through (4). Only after you have met your obligation, and no agreement is reached, is it appropriate that the defense supply certain attorney billing information in the format laid out in the rules.

Unless I am missing something, I do not believe you have complied with your obligations under the Rule. As Mr. Centeno will be gone for several more business days, I suggest you put together the materials required of you under Rule 54.3 (d) (1) through (4) and supply them to Mr. Centeno at your earliest convenience.

I also wanted to confirm to you what I advised you orally. Mr. Oliver has retired from the practice of law and I will be filing a notice of withdrawal for Mr. Oliver at the next opportunity I am before the District Court. As I advised you, Mr. Centeno has assumed responsibility for the case as lead counsel.

769320/3035812.1-HC01_DS1A

01/10/02   THU 16:12 FAX 215 665 3121

Mr. David A. Cerda
July 3, 2001
Page 2

Meanwhile, let me wish you a peaceful and safe Fourth of July weekend.

Sincerely,

Thomas F. Ging

cc:     Mr. Joseph J. Centeno

769320/3095812.1-HC01_DS1A